

JOHN T. GORMAN
Federal Public Defender
District of Guam

ALEXANDER A. MODABER
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
JIN YOUNG OH

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-00075 |
| | ) | |
| Plaintiff, | ) | ~~NOTICE OF MOTION~~; MOTION TO |
| | ) | SUPPRESS STATEMENTS; |
| vs. | ) | DECLARATION OF COUNSEL; |
| | ) | CERTIFICATE OF SERVICE |
| JIN YOUNG OH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF MOTION

TO: MARIVIC P. DAVID
     Assistant United States Attorney

PLEASE TAKE NOTICE that the following motion will be heard before the Honorable Joaquin V.E. Manibusan, Jr., in his courtroom in the United States Courthouse, 4th Floor, U.S. Courthouse, 520 West Soledad Ave., Hagatna, Guam, on _____, or as soon as counsel may be heard.

ORIGINAL

## MOTION TO SUPPRESS

COMES NOW the defendant, JIN YOUNG OH, through counsel, Alexander A. Modaber, Assistant Federal Public Defender, and moves this Honorable Court to suppress all statements made by the defendant obtained in violation of his Miranda rights.

This motion is based upon the Fifth and Sixth Amendments to the United States Constitution, the attached memorandum of law, declaration of counsel, and upon evidence which may be adduced at an evidentiary hearing requested to be held on this matter.

DATED: Mongmong, Guam, February 13, 2006.

_____
ALEXANDER A. MODABER
Attorney for Defendant
JIN YOUNG OH

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

According to the discovery provided by the government, on October 9, 2005, Jin Young Oh (hereinafter referred to as OH), a Korean citizen, arrived in Guam on board Korean Airline flight 805 from Incheon, Korea at approximately 1:50 a.m. At approximately 2:35 a.m., OH presented himself to Guam customs inspection area for customs inspection. OH was questioned by Customs and Quarantine officer Joseph A. Gange without the benefit of a Korean interpreter. OH responded in broken English. Inside OH's luggage was a cardboard box which had a picture of a 4 piece stereo system.

2

At approximately 2:38 a.m., Officer Gange took the box containing the stereo system and ran it through an x-ray machine. The x-ray machine showed what appeared to be a dense material being concealed inside the stereo box. At 2:39 a.m., the officer informed OH that he would dismantle the stereo box to identify the concealed unknown object. The officer proceeded to partially dismantle the speaker box by removing the screws. A strong smell of glue emitted from the box. Also, a black ink was used to color and conceal a fake side speaker opening. A probe of the area revealed a cloth material covering a Styrofoam backing.

At approximately 2:40 a.m., Officer Gange requested a Korean interpreter from Korean air. Shortly thereafter, Bryan Chang, a Korean Air Agent arrived and acted as interpreter for OH. OH was questioned more in depth as to the particulars of the stereo system. OH answered questions as to where he obtained the stereo system, how long he has had it and to whom was the stereo system for. See Exhibit A- Report from Customs officer Joseph A. Gange

At approximately 3:30 a.m., while inspecting wires protruding out of the speaker, Officer Gange, probed the small opening. He heard a crunch sound and when he pulled out the prod from the speaker, he discovered white crystalline substance at the end of the prod. A field test was preformed on the substance on the prod with a positive result for the presence of amphetamines.

At approximately 3:33 a.m., Guam Customs Contraband Enforcement personnel (hereinafter referred to as CET) were notified and activated the scene for further processing. At approximately 3:43 a.m., inspection of OH's luggage was completed with no further findings of contraband. At approximately 3:50 a.m., an operation was conducted to have OH walk outside with the airline agent to see if anyone was still outside to pick him up. Three customs agents were

3

positioned in areas for quick response to detain any individual who may have come to pick up OH. At approximately 4:05 a.m., the operation was shut down with negative results. At approximately 4:45 a.m., a strip search was conducted of OH and nothing was recovered. The package removed from the stereo speaker contained approximately 2078 gross grams of methamphetamine.

At approximately 5:30 a.m., United States Customs agent John Duenas reviewed the Korean flight manifest and conducted inventory of OH'S wallet. At approximately 6:30 a.m., he contacted U.S. Drug Enforcement Administration Special Agent Danny Cho. John Duenas informed Danny Cho of the seizure of methamphetamine and of the arrest of OH. At approximately 8:05 a.m., Agent Cho advised OH of his constitutional rights which OH acknowledged and waived his rights. This advisement and wavier of rights was done in the Korean language. A wavier of rights form in the English language was signed by OH at approximately 8:20 a.m. See Exhibit B- U.S. CUSTOMS SERVICE STATEMENT OF RIGHTS. OH gave a statement to law enforcement personnel. See Exhibit C page3- DEPARTMENT OF HOMELAND SECURITY- REPORT OF INVESTIGATION.

At a hearing in this matter, the evidence would show that OH has a very limited grasp of the English language. Furthermore, Exhibit A was not fully translated and he did not know what the document represented when he was told to sign it.

## II. THE DEFENDANT'S STATEMENTS MUST BE SUPPRESSED AS THEY WERE TAKEN IN VIOLATION OF HIS MIRANDA RIGHTS AND WERE INVOLUNTARILY OBTAINED.

Before statements made to law enforcement officers by an accused may be admitted at trial, the burden rests upon the government to demonstrate not only that the accused was properly

4

advised of his/her Miranda rights, but also that the accused "knowingly, voluntarily and intentionally" waived these rights. Teague v. Louisiana, 444 U.S. 469 (1980); United States v. Heldt, 745 F.2d 1275 (9th Cir. 1984). If the interrogation continues without the presence of an attorney and a statement is taken, a "heavy burden" rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda, 384 U.S. at 475.

In Moran v. Burbine, 475 U.S. 412 (1986), the Supreme Court reaffirmed the high level of proof required to find a waiver of Miranda rights. The Court required the following:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness, both of the nature of the right to be abandoned and the consequences of the decision to abandon it. Id. at 421. [Emphasis added.]

A waiver of Miranda rights must be determined by the particularities of each case. Edwards v. Arizona, 451 U.S. 477, 482 (1981). Moreover, this Court must "indulge in every reasonable presumption against waiver." Heldt, 745 F.2d at 1277.

Courts look at many factors to determine whether a Miranda waiver was knowing and intelligent. The situation and experience of the accused may be relevant to show whether the waiver was knowing and intelligently made. See Arizona v. Fulminante, 499 U.S. 279 (1991) (consideration of intelligence and I.Q. of defendant is relevant to determining that statements were involuntary); United States v. Fouche, 776 F.2d 1398, 1404 (9th Cir. 1985) (voluntariness determination is a "state of mind" inquiry), appeal after remand, 833 F.2d 1284 (1987), cert. denied,

5

486 U.S. 1017 (1988). An otherwise voluntary confession may be inadmissible if the accused lack the mental capacity to make a knowing and intelligent waiver. United States v. Frank, 956 F.2d 872, 875 (9th Cir. 1992) (citing Moran, 475 U.S. at 421).

Even if this Court finds Mr. Oh waived his rights under the Fifth and Sixth Amendments, his statement does not pass the voluntariness test and must be suppressed on these grounds as well. To determine voluntariness of a confession, the Court must determine "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir. 1991)(en banc), cert. denied, 112 S. Ct. 870 (1992). "A statement is involuntary if it is extracted by any sort of threats or violence [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir. 1990). "Circumstances" include past history, education, and physical condition, in addition to the circumstances surrounding the actual statement. Crane v. Kentucky, 476 U.S. 683 (1986). Psychological pressures have been recognized as creating impermissible coercion. United States v. Moreno, 891 F.2d 247 (9th Cir. 1989). To be voluntary, a statement must be the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199 (1960); United States v. Miller, 984 F.2d 1028, 1032 (9th Cir. 1993) (confession not coerced where "nothing in the record indicate[d] [defendant's] decision to confess was anything other than 'the product of a rational

6

intellect and a free will.'")

Finally, the Ninth Circuit has recognized that a criminal defendant's poor English competence may serve to undermine the validity of any waiver obtained when English was the primary language used in order to obtain the relinquishment of the Constitutional right. United States v. Garibay, Jr., 143 F.3d 534 (9th Cir. 1998).

Title 18 U.S.C. § 3501(b) lists five factors which must be considered in determining voluntariness: (1) time elapse between arrest and arraignment if the statement was made in that period (not applicable in the instant matter); (2) awareness by the defendant of the charges he was facing; (3) advisement of the right to silence; (4) advisement of the right to counsel; and (5) the presence or absence of counsel. The presence or absence of any particular factor is not necessarily dispositive of the voluntariness issue.

In the instant matter, it is far from clear that OH understood he was facing narcotics charges. It is undisputed that counsel was never present during the interrogation. There are two issues before the court. When officer Gange sent the cardboard box through the x-ray machine and detected a foreign object, he should have given OH his Miranda warnings prior to further questioning with the Korean interpreter. Second issue, is whether the Miranda warnings were properly given and whether OH understood the paper he signed.

There is no single test for the voluntariness of a waiver of Miranda rights. The courts, on a case by case basis makes a decision based upon the unique facts particular to the case before it. In the instant matter, the combination of factors before the court, to wit: OH's very limited understanding of the English language, his lack of sleep after arriving on a flight from Korea at

7

approximately 1:50 a.m., and the Miranda waiver occurred at 8:20 a.m., U.S. Customs form not being fully translated, not knowing what the U.S. Customs Form represented when he signed it, his complete unfamiliarity with the American criminal justice system combined with his lack of understanding of what a lawyer even does or why he would need a lawyer, and his lack of knowledge that he was faced with very serious federal charges, all militate in favor of suppressing his statement.

## CONCLUSION

FOR all of the above reasons, OH moves this Court to enter an order suppressing any statements made by OH.

DATED: Mongmong, Guam, February 13, 2006.

_____
ALEXANDER A. MODABER
Attorney for Defendant
JIN YOUNG OH

## DECLARATION OF COUNSEL

I, ALEXANDER A. MODABER, hereby declare as follows:

1. That I am counsel for defendant, JIN YOUNG OH, having been appointed pursuant to the Criminal Justice Act.

2. That Mr. OH has a very limited understanding of the English language.

3. That Mr. OH alleges he did not fully understand the U.S. Customs Service form that bears his signature.

4. That Mr. OH asserts that he has little or no experience or knowledge of the

8

American criminal justice system and at the time of his interrogations.

5. That the facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Mongmong, Guam, February 13, 2006.

_____
ALEXANDER A. MODABER
Attorney for Defendant
JIN YOUNG O H

9



## CUSTOMS & QUARANTINE AGENCY, GUAM
Guam's First Line of Defense Protecting Our Island, Our People and Our Resources

*Director of Customs & Quarantine Ricardo C. Blas*

## PRELIMINARY REPORT

**Classification:** Importation & Possession of a Controlled Substance

**Date:** October 09, 2005

**Case number:** GCIA- 035-05

**Subject:** Secondary Baggage Inspection, Seizure of Evidence

**Reference:** OH, JINYOUNG

**Submitted by:** Customs & Quarantine (CQ) Officer I

Reference can be made to all Reports of Investigation (ROI) under the above case number

### DETAILS:

1. On October 9, 2005, at about 0025 hours, I assumed duty at the Antonio B Won Pat International Airport (ABWIAT) to perform government overtime operations. The Supervisor in Charge, CQIII Raymond Benavente, assigned me to conduct secondary inspections at counters #5 & 6 on passengers arriving into Guam.

2. Same date, about 0150 hours, Korean Air Flight number 805 arrived at ABWIAT from Incheon, Korea with 270 passengers and 12 crewmembers terminating. The terminating pax from the said flight proceeded to the Guam Customs Inspection area for Customs formalities.

3. Same date, at about 0235 hours, an unidentified male individual approached counter #6 and handed me his Customs Agricultural Declaration Form (CADF). I asked him to present his Passport or Identification card (I.D) Through a review of his Customs form and passport the individual was identified as:

Name. OH, JINYOUNG
DOB: 02 August 1970
PPN. GK1630844

Shortly thereafter, I asked OH if he had anything to declare or was carrying anything as described in question # 4 of his CADF. OH replied by stating, "No" in English. I asked OH if he was bringing any gifts for anyone while he is here on vacation. OH did not say anything, so I continued with my interview. I noticed that OH seemed a little nervous when I was questioning him as to his purpose on Guam. I asked OH to put his hand carry bag and a beige-in-color luggage that he was pulling, onto the counter for my inspection. I then asked OH if all the items he is carrying belong to him, he replied, "Yes" in English. I then identified his baggage through his baggage tags. Upon completing my inspection of his hand-carry bag, I asked OH to open his

*Mailing Address. P.O. Box 21828. GMF, Barrigada. Guam 96931*
*Street Address 13-16A Mariner Avenue. Tiyan, Guam 96913*
*Telephone (671)475-6202   Facsimile (671)475-6227   Web Site www.guamjustice.net*



IYO01-0177

Beige-in-color luggage brand name "LOJEL", for my inspection. When OH opened his luggage, I saw a box inside which had a picture of a 4 piece stereo system; brand name, "MICROLAB" I asked OH whom the stereo system was for? He replied, "For a friend" in broken English.

4. Same date, at about 0238 hours, I then took the box containing the stereo system and ran it through the x-ray where I saw what appeared to be a dense material being concealed. Upon the discovery, I notified the supervisor of the possible concealment of narcotics.

5. Same date, at about 0239 hours, I informed OH that I would dismantle the speaker box to probe to identify the concealed unknown object. I told him that I needed to inspect the contents of the box to which he replied, "Okay!" I then proceeded to partially dismantle the speaker box by removing the screws. While opening the box containing the stereo system a strong smell of glue emitted from the box. A visual inspection of the large speaker revealed that black ink was coming out of the small opening of the speaker. Closer inspection of the speaker revealed that the black ink was used to color and conceal a fake side speaker opening. A probe of the area revealed a cloth material covering a Styrofoam backing.

6. Same date, at about 0240 I requested a Korean interpreter from his respective airline. Shortly thereafter, Bryan Chang a Korean Air Agent arrived and acted as interpreter for OH. Through Chang I began to question OH more in depth as to the particulars of the stereo system. I asked OH how did he acquire the speaker system, he replied through Chang, "I bought it at a flea market about four months ago." I then asked OH if he had any receipts for the speaker system? OH replied, "No!" I asked OH if the speaker system was new, he replied "yes!" I then asked if the speakers were sent to a shop for repair recently, he said "No!" I then asked OH why was black ink coming out of the side of the speaker box. He replied, "I don't know." I then asked OH if he tampered with the box in any way? He answered, "No!" I then asked OH who was the speaker system for? He replied, "Robert Kim" which he wrote on his CADF I then asked him what his relationship to Kim was, he replied, "A friend." I then continued to find a way to inspect the speaker box while probing it with a metal prod.

7. Same date, at about 0330 hours, while inspecting the rear of the speaker where the wires protrude out of the speaker I began to probe through the small opening, I heard a crunch sound. I then pulled the prod out from the speaker, and discovered white crystalline substance at the end of the prod.

8. Same date, at about 0331 hours, I conducted a field test using a MARQUIS REAGENT test kit #902 for a field test for the presence of Opiates and Amphetamines type compounds with a presumptive positive result for the presence of amphetamines.

9. Same date, at about 0332 hours, I notified the supervisor of the findings.

10. Same date, at 0333 hours, Contraband Enforcement Team (C.E.T.) personnel were notified by CQII Roland Taitingfong and were subsequently activated to the scene for further processing of OH

11. Same date, at about 0343 hours, I finished the inspection of the baggage of OH with no further findings of contraband.

12. Same date, at about 0425 hours, C.E.T. personnel CQII Franklin J. Taitague and CQI Bryan S. Galarpe arrived to assist with the processing of OH.

Customs & Quarantine Agency
Mailing Address P.O. Box 21838, Guam Main Facility Barrigada Guam 96921
Street Address 13-16A Mariner Avenue, Tiyan, Guam 96913
Telephone (671)475-6202 Facsimile (671)475-6227 Web Site: www.guamcustoms.net

13. Same date, at 0445 hours, I conducted a strip search of **OH** which was witnessed by CQII Raymond J. Blas with no further findings for other contraband.

14. Same date, at about 0455 hours, CET personnel took custody of **OH** for further processing

15. Same date, at about 0455 hours, I relinquished custody of all drug and non-drug evidence to CET Officer Taitague

**END OF REPORT**

Submitted for your review and information and to be attached to all ROI's under the above case number.

CQI Joseph A. Gange
08-17 Shift, CARGO Section

Concurred by:
CQIII Raymond Benavente
Supervisor, 2400-0800 Shift, ABWIAT

Customs & Quarantine Agency
Mailing Address: P.O. Box 21838, Guam Main Facility, Barrigada, Guam 96931
Street Address: 13-16A Mariner Avenue, Tiyan, Guam 96913
Telephone (671)475-6202  Facsimile (671)475-6227  Web Site: www.guamjustice.net



DEPARTMENT OF THE TREASURY
United States Customs Service

# STATEMENT OF RIGHTS

- Before we ask you any questions, you must understand your rights.
- You have the right to remain silent.
- Anything you say can be used against you in court
- You have the right to talk to a lawyer for advice before we ask you any questions.
- You have the right to have a lawyer with you during questioning.
- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
- If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are  At this time, I am willing to answer questions without a lawyer present

Signed _우 진영 [signature]_

Witness: _[signature]_

Witness: _John [signature]_

Date/time: _10/9/05  8:20pm_

Customs Form 4612 (03/02)

DEFENDANT'S EXHIBIT

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE REPORT OF INVESTIGATION | 1. TECS ACCESS CODE 3 |
|---|---|
| | 2 PAGE 1 |
| | 3. CASE NUMBER GM13WS06GM0001 |

| 4. TITLE: JIN YOUNG OH |
|---|

| 5. CASE STATUS: INIT RPT |||||
|---|---|---|---|---|
| 6. REPORT DATE 112105 | 7. DATE ASSIGNED 101105 | 8. CLASS 3 | 9. PROGRAM CODE 169 | 10. REPORT NO. 001 |

| 11 RELATED CASE NUMBERS: |
|---|

| 12 COLLATERAL REQ: |
|---|

| 13. TYPE OF REPORT: INVESTIGATIVE FINDINGS |
|---|

TOPIC: ARREST OF OH AND THE SEIZURE OF 2078 GRAMS OF CRYSTAL METHAMPHETAMINE

14. SYNOPSIS:
On October 9, 2005, Jin Young OH, a Korean citizen, arrived in Guam on board Korean Air flight 805 from Incheon, Korea. OH was subjected to a secondary Guam Customs inspection resulting in the discovery of 2078 grams of crystal methamphetamine secreted in a multimedia speaker that was in OH's checked baggage. ICE RAC Guam agents were contacted and adopted the case.

Details of the discovery, the seizure of the crystal methamphetamine and the arrest of OH are provided in this report.

| 15. DISTRIBUTION: RACGM SACHL CAKO | 16. SIGNATURE: DUENAS JOHN SENIOR SPEC AGENT |
|---|---|
| | 17. APPROVED: ROBERTSON ROBERT D RAC-RESIDENT AGENT IN |
| | 18 ORIGIN OFFICE: GM GUAM - RAC | 19. TELEPHONE. 671 472 7265 |
| | | 20. TYPIST: DUENAS |

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DEFENDANT'S EXHIBIT

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | 1 PAGE 2 |
| REPORT OF INVESTIGATION CONTINUATION | 2. CASE NUMBER GM13WS06GM0001 |
| | 3. REPORT NUMBER: 001 |

1. On October 9, 2005, Jin Young OH, a Korean citizen, arrived in Guam on board Korean Air flight 805 from Incheon, Korea. OH was subjected to a Guam Customs secondary inspection conducted by Guam Customs Officer Officer Joseph Gange. While conducting an inspection of OH'S checked baggage, Officer Gange noticed a box marked "mirolab" with pictures of speakers and a multimedia amplifier.

2. Officer Gange removed the box and its contents from within OH'S checked baggage to conduct a further examination. Gange x-rayed the box and its contents and noted that it appeared that there were foreign objects within the large speaker. Officer Gange also noticed that the box was secured by a yellow tape. The tape was placed in a fashion that indicated that the box had been previously opened. Officer Gange opened the box and smelled a strong odor consistent with glue emitting from within the box. As Officer Gange removed the large speaker he noticed that the speaker seemed unusually heavy.

3. Officer Gange, with the assistance of Bryan Chang, a Korean Air agent fluent in Korean language, asked OH how OH acquired the speakers. OH stated that he purchased the speakers at a flea market four months ago. OH said that the speakers are for Robert Kim in Guam.

4. Officer Gange continued his examination of the speakers by inserting a prod through the opening of a hole where the wires run through the speakers. As Officer Gange removed the prod he noticed crystal substance on the prod. Officer Gange conducted a field test of the crystal substance on the prod resulting in a presumptive positive for amphetamines.

5. Officer Gange contacted Immigration and Customs Enforcement Task Force Agent (TFA) Erwin Fejeran and informed TFA Fejeran of his discovery. TFA Fejeran responded and assisted Guam Customs Officer Franklin Taitague in the extraction of the crystal substance from within the speaker.

6. TFA Fejeran removed the speaker from the wood case and found a plastic bag with crystal methamphetamine. TFA Fejeran also noticed that the inside of the speaker was sprayed with insulation foam. TFA Fejeran removed the insulation foam and found a wooden false wall along one side extending to the top inner wall. Upon removing the false wooden wall, TFA Fejeran discovered thirteen more plastic bags with crystal methamphetamine. The total gross weight for the fourteen plastic bags and its contents is 2078 grams.

7. ICE SA John Duenas arrived on October 9, 2005, at about 5:30am. SA Duenas reviewed the Korean Air manifest and noticed that OH'S airline passenger name record (PNR), SB4KEB5, is the same as Young Sang Yun who was also an arriving passenger in Guam on board Korean Air flight 805. The manifest indicated that OH was the 227th person to check in for his flight and Yun was the 228th

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | 1 PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | 2. CASE NUMBER GM13WS06GM0001 |
| | 3 REPORT NUMBER: 001 |

person to check in for Korean Air flight 805. The manifest also indicated that OH sat in seat number 42C and Yun sat at 42D.

8. SA Duenas conducted an inventory of OH'S wallet and found the following:

    A. $720.00 U.S. currency

    B. BC MasterCard, number 5585069413017978, in the name of Ye Gun Jong Hap Gun Seol. Expiration date is 03/07.

    C KHC Master card, number 5585261043840057, in the name of Gong Yong Yegun Expiration date is 12/03

    D American Express credit card, number 3779906268, in the name of Youn Young Nam Expiration date of 02/05

9. On October 9, 2005, at about 6:30am, SA Duenas contacted Drug Enforcement Administration (DEA) agent Danny Cho and informed SA Cho of the seizure of the crystal methamphetamine and the arrest of OH. SA Duenas requested SA Cho's assistance to interview OH At about 8:05am, on October 9, 2005, DEA SA Cho who is fluent in the Korean language, advised OH of his constitutional rights which OH acknowledged and waived. OH provided the following statements:

    A. OH stated that he does not have a permanent employer. OH is hired by various construction companies in Korea as a laborer.

    B. A friend of OH paid for OH's airline ticket but OH does not recall his friend's name The purpose of the trip is for vacation. OH intended to stay for one week in Guam and was anticipating staying at the Pacific Island Club (PIC) hotel. OH said that he does not have reservations at the PIC but intends to check in at the PIC. OH learned of the PIC hotel from a magazine he saw in the airplane on his way to Guam.

    C. OH said that he does not have any friends or relatives in Guam.

    D. OH stated that the speakers found in his baggage belong to him but he would rather not discuss anything about the speakers.

    E. SA Duenas asked OH why he is in possession of three credit cards with different names. OH replied that he found the credit cards in Korea. He was told by his friend that he would need credit cards in the United States and OH figured that he bring should them along. OH stated that he had no intention of using the credit cards.

10. Shortly after the initial interview, OH stated that he was willing to

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br>REPORT OF INVESTIGATION<br>CONTINUATION | 1. PAGE 4 |
| --- | --- |
| | 2 CASE NUMBER GM13WS06GM0001 |
| | 3 REPORT NUMBER: 001 |

cooperate in the investigation and provided the following statements:

    A Sometime in May or June 2005, OH was recruited by an unknown individual through an Internet chat room in Korea. OH was told that he would be paid $4,500.00 to deliver "something" in Guam. OH does not know what he was to deliver. OH does not remember the Internet address that he used to access the chat room.

    B. OH applied for a Korean passport sometime in late August or early September 2005 in preparation for his trip to Guam. OH paid for the passport on his own.

    C. On the day of OH'S departure from Korea, OH received an e-mail from an unknown individual advising OH that a box with speakers would be delivered to OH  OH received the box with the speakers at home which was delivered by an "errand service". OH described an "errand service" to be a company that delivers mail or other items within Korea.

    D  The e-mail also told OH to wear a hat and eyeglasses and upon arrival in Guam the intended recipient of the speakers will approach OH. OH was instructed to pick up the airline ticket at a travel agency at the Incheon airport in Korea. The e-mail did not provide a name or number for the person in Guam that OH was to meet

    E. OH said that he is aware that he was carrying speakers but was not aware that the speakers contained crystal methamphetamine. OH stated that he suspected that the box with the speakers contained something illegal because of the amount of money he was going to be paid and the price of the airline ticket.

    F. OH does not know anyone in the flight but engaged in conversation with a Korean male who sat next to him  OH does not recall the male's name.

11. SA Duenas contacted the Federal Public Defender's office and left a voice mail message informing them of the arrest of OH. OH was processed and detained at the federal holding facility in Hagatna, Guam.

12. On October 12, 2005, OH appeared in the District Court of Guam for his initial appearance. OH was remanded to the custody of the U.S. Marshals.

13  The following items were seized as evidence under seizure number 2006-3210-0000-0101·

    (1)   crystal methamphetamine

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. PAGE 5 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | 2. CASE NUMBER GM13WS06GM0001 |
| | 3. REPORT NUMBER: 001 |

   (2)   bag of packing material with ICE residue

   (3)   large "microlab" speaker

   (4)   box with "microlab" amplifier and speakers

   (5)   Korean Airlines ticket number 51772334845

   (6)   Korean Airlines boarding pass

   (7)   Korea Immigration arrival card

   (8)   white converse hat

   (9)   3 miscellaneous credit cards

  (10)   Korea passport number GK1630844

  (11)   Korean Air checked baggage tag

14. The drug evidence consisting of 2145 total gross grams of suspected crystal methamphetamine was mailed on October 12, 2005 to the DEA Southwest Laboratory via registered mail number RR076836589US

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

## CERTIFICATE OF SERVICE

I, RENATE DOEHL, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on February 13, 2006:

MARIVIC P. DAVID
Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED: Mongmong, Guam, February 13, 2006.

*[signature]*
RENATE DOEHL
Operations Administrator

ALEXANDER A. MODABER
Attorney for Defendant
JIN YOUNG OH